```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

GWEN RENEA DAVIDSON,            )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-13-256-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )
```

## REPORT AND RECOMMENDATION

Plaintiff Gwen Renea Davidson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 8, 1975 and was 36 years old at the time of the ALJ's decision. Claimant completed her high school education and one year of college courses. Claimant has worked in the past as a dishwasher, preparation cook, and housekeeper. Claimant alleges an inability to work beginning October 8, 2008 due to limitations resulting from dissociative identity disorder, major

depression, paranoid schizophrenia, anxiety, panic, post traumatic stress disorder ("PTSD"), bipolar disorder, obsessive-compulsive disorder, seizures, pseudoseizures, and chronic pain.

**Procedural History**

On August 17, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 21, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Charles Headrick. On January 20, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on March 1, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform all of her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the opinions of Claimant's treating physician;

4

and (2) reaching an RFC which was not supported by substantial evidence.

**Evaluation of Treating Physician's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of seizure disorder, major depressive disorder, moderate with psychotic features, and bereavement, complicated. (Tr. 15). The ALJ also found Claimant retained the RFC to perform her past relevant work as a dishwasher at a light work level, preparation cook, at a light work level, and housekeeper, also at a light exertional level. (Tr. 21). In so doing, the ALJ determined Claimant could perform a full range of work at all exertional levels with the nonexertional limitations of avoiding concentrated exposure to hazards such as machinery and heights. Claimant was found to be able to perform simple and some complex tasks and was able to relate to others on a superficial work basis. The ALJ also found Claimant could adapt to a work situation. (Tr. 17). Claimant could occasionally reach in all directions with the left arm. The ALJ found Claimant must avoid heights and dangerous moving machinery. (Tr. 23). After consultation with a vocational expert, the ALJ also found Claimant could perform the representative jobs of candy spreader, floor waxer, bagger, and housekeeper, which the vocational expert testified existed in

5

sufficient numbers in the regional and national economies. (Tr. 22).

Claimant contends the ALJ failed to afford the opinions of Dr. Jeffrey Jenkins, her treating physician, controlling weight as required by the prevailing case authority. On December 19, 2011, Dr. Jenkins completed a Mental Residual Functional Capacity Assessment form on Claimant. He determined Claimant was markedly limited in the areas of the ability to understand and remember very short and simple instructions; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace and without an unreasonable number and length of rest periods; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to

6

basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others.

Dr. Jenkins also determined claimant was moderately limited in the areas of the ability to make simple work-related decisions; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to be aware of normal hazards and take appropriate precautions. In his narrative statement on the assessment, Dr. Jenkins stated that "Ms. Rose suffers from pseudoseizures, seizures, generalized anxiety, dissociative identity (due to) child abuse & neglect. Her memory is very much impaired as she dissociates (unreadable) frequently. She has also been described/diagnosed as paranoid schizophrenia." (Tr. 400-01).

In the functional capacity assessment portion of the form, Dr. Jenkins states "Ms. Rose is significantly functionally impaired. She has had frequent ER visits for seizures, multiple bouts of coming out as Sarah as she came out of a seizure. She is combative and makes totally different decisions from Gwen. There is not any effective tx for this condition (unreadable)." (Tr. 402).

7

The ALJ determined that Dr. Jenkins opinion contained in the assessment form was "given little weight." His basis for rejecting the opinion is stated as "[t]he opinion is not consistent with the evidence of record. Furthermore, it is apparent that Dr. Jenkins is a general practitioner, not a specialist in psychiatry." (Tr. 21).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

8

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's statement that Dr. Jenkins is not a specialist in psychiatry is belied by the record. He acted as her psychiatrist in treating her. (Tr. 376, 380). Moreover, the Appeals Council received a statement from the Oklahoma Board of Medical Licensure

and Supervision stating that Dr. Jenkins specialized in Family Medicine, and Psychiatry and was board certified by the American Board of Family Medicine and American Board of Psychiatry and Neurology. (Tr. 403). This basis for rejecting Dr. Jenkins' opinions espoused by the ALJ was, therefore, patently false.

The ALJ also stated that Dr. Jenkins' opinion was contradicted by the medical record - without indicating the specific records with which his opinion was in contradiction. Dr. Jenkins' treatment records from April of 2009 through April of 2011 indicate frequent seizures and pseudoseizures requiring emergency room treatment, the emergence of the "Sara" personality, anxiety, memory problems, and suicidal thoughts due to auditory hallucinations. (Tr. 254-55, 367-68, 376, 380, 382, 386). The ALJ's opinion lacks any substantial basis for the conclusion reached in rejecting Dr. Jenkins' opinions. Even while adopting the opinion of the consultative examiner, the ALJ ignored that Claimant experienced problems during the consultative examiner's examination. (Tr. 312). Claimant's extensive mental problems also extended to the time the agency interviewer noted that it appeared she was speaking with two different people during the interview. (Tr. 204-05). The ALJ's conclusion that Dr. Jenkins' opinion is entitled to "little weight" is not supported by the medical evidence. On remand, the

ALJ shall properly evaluate his opinion in light of the supporting medical record.

### RFC Determination

Since the ALJ did not adequately consider the totality of Claimant's mental impairments in assessing her RFC, the ALJ shall re-evaluate his RFC determination in light of Dr. Jenkins' supported opinion and the medical record.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of June, 2014.

　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　KIMBERLY E. WEST
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE